Ms. Gaines? Your Honors, may it please the Court, my name is Makeba Gaines and I represent the appellant O.W. O.W. was on appeal from an award of summary judgment to the appellees in the District Court and denial of partial summary judgment to O.W. Today without waiver of any issues, I will explain why the Court should reverse or vacate the judgment of the District Court. Your Honors, since T.L.O. was decided in 1985, we know educators need only reasonable grounds to search a student suspected of committing violations of school rules or the criminal law. But the Court told us in T.L.O. that this rule would not apply as a special needs case where educators shown to be coordinating with or acting on behalf of the police. In 2008, the Virginia Beach Police Department and the school board, they entered into a partnership, the SRO partnership, and they split that process. They agreed that going forward, the educators would investigate students for violations of school rules and their partners in the police department would investigate the violations of criminal law. But since that time, educators have continued detaining, searching, and interrogating students while their police partners are present in a manner that avoids all the burdens of direct police action and deprives children of procedural safeguards that would be afforded to adults in the same situation. So are you alleging some sort of a conspiracy here? I'm not exactly sure where you're going. Not necessarily arising out of just the partnership agreement, Your Honor, but their conduct as well. But yes, there is an allegation of conspiracy between the separate parties, Your Honor. On March 5th, 2019, pursuant to that practice and custom, O.W. and two other students were  So what's your, other than this agreement, what's your evidence of practice and custom? Well, Your Honor, Officer Carr testified that it was a part of her custom that she would only get involved when the investigation involved criminal conduct. However, I'm sorry, just a moment, Your Honor, Officer Carr's supervisor, Arnold, testified that this investigative practice has always been the case since he's been employed in the Virginia Beach Police Department. And so 20 years of similar investigations conducted the same way is certainly proof of a tacit understanding. We also have communication between Officer Carr and Mr. Baker. The female student testified that Mr. Baker would leave the room with her from time to time to have communications or conversations with Officer Carr. But, Counsel, at least on the Fourth Amendment claim, if TLO and Wolford apply, isn't the test about whether you can do a search, conduct a search, isn't the test reasonable suspicion? Well, the test would not be reasonable suspicion, Your Honor. And the reason the test is not reasonable suspicion is because on school grounds, we're talking about the special needs exception or the special needs doctrine, whereas Wolford pertained to the exigent circumstances exception. And so that's where the court went wrong. The court extended the special needs doctrine directly to law enforcement through the exigent circumstances exception. In the United States v. Curry, this court clearly delineated... Can I pause you there? You said the court extended the TLO standard to law enforcement. I thought the search you're challenging on appeal is the search by the principal, not the search by law enforcement. Yes, Your Honor. The court stated that the special needs doctrine, of course, covers or TLO covers the officer or Mr. Baker's search, but the court also stated that it covered the principal's subsequent search as a part of this Wofford exception, which is an exigent circumstances case. And the question on appeal, right, is the principal's search of the phone. Yes, Your Honor. That's a part of the issue on appeal. We're asking the court to also remand and answer the question... For the district court to answer the question in regard to the officer's search as well. And what's the question? Where's that? I don't understand. What's the question you want remanded? Well, the court did not answer the question about whether there was a conspiracy between the parties and whether Officer Carr's search was unlawful. We were asking the court to consider the question of conspiracy and determine whether Officer  Okay, and your evidence of conspiracy is there's this cooperation agreement between the school board and the police department. And what else? Well, Your Honor, it's also how they have used the agreement between the two separate parties. It's the fact that the way the process works is that initially the principal is the person who detains the child, not the police officer, even though a criminal investigation is intended from the start when an SRO is going to be involved. However, what happens is the principal takes the lead in the criminal investigation, asks all the questions... So what's your evidence that this principal was doing that in this case? Their testimony, Your Honor. They testified that... Who is they? Mr. Baker testified that he engaged Officer Carr's presence prior to even detaining OW, prior to knowing what violation, if any, of OW committed against the school violation... I'm sorry, against the student code of conduct. And just for a moment, Your Honor. And once again, the female student testified that Officer Carr told her that not telling the truth in the investigation was a violation of school rules. That's the exact same warning Mr. Baker gave to OW in the separate room. Well, was that factually inaccurate? Well, it certainly is factually accurate. There is a violation of the student code of conduct for a student who does not tell the truth during a criminal investigation. Right. That's part of the problem. Well, wait a minute. That's a different question. If a school administrator is investigating a violation of school rules, is it also a violation of their rules of conduct for the student to not be truthful? Absolutely, Your Honor. And the problem is every single violation of criminal law is also a violation of the student code of conduct. And so that allows them to do this investigation together. The court... Wait a minute. Go back. You're saying that whenever there's a violation of the student's code of conduct, that's a criminal offense? No, no. The opposite way, Your Honor. Every violation of the criminal law is a violation of the student code of conduct. And so all of the...Mr. Baker testified, Officer Carr testified that when something is criminal, she gets involved immediately at the inception of the investigation. But she doesn't come down... So if a student has a conviction for, I assume they're tried as an adult, a conviction for driving under the influence, not on school grounds, it's a criminal offense. You're saying that that is converted into a violation of the student's school's code of conduct? Well, it certainly is a violation of the student code of conduct, but that's not the types of investigations that are conducted on school grounds through the school principal. They limit those investigations to the criminal conduct that occurs on school grounds. So the district court distinguished Ferguson versus City of Charleston on the ground that it involved a search that was not based on reasonable suspicion, whereas OW had been searched on reasonable suspicion. However, the court does not distinguish special needs cases for that reason. This court said in the United States versus Curry on re-hearing en banc in 2020, that the court applies the same primary purpose test to all special needs cases in all contexts. So was it... Do you agree there was a reasonable suspicion for the school principal to detain and question OW? Yes, Your Honor. Okay. Absolutely. And we certainly... We would prefer if educators could do all they... Within their power to ensure that schools are safe, that our students are going to be... I'm a mom. We want schools to be safe, and we want educators to be able to ensure the health, safety, and welfare of children. The problem is we can't have that if schools are also going to be operating or behaving as police departments. So what do you say that the principal should have done here that he did not do? The problem is not... We feel like it could have been one way or the other, Your Honor. We could have had a school disciplinary investigation, or we could have had a criminal investigation, but we just can't have both, and they can't occur at the same time. The goal is that the officer arrives at some point later after the investigation, and he has to do some work when he gets on the scene. It sounded that O.W. had already written two statements or confessions. He admitted to the principal that he had this photo before the school resource officer ever appeared. Well, no, Your Honor. The very first thing Mr. Baker did was to engage Officer Carr. He went to her office, and that was her testimony, and that was also his testimony. That's the very first thing he did after he received the report from the teacher. Then he went to detain O.W. and took O.W. to a guidance counselor. But when you say he engaged Officer Carr, wasn't the testimony that the principal said, hey, I have a situation here, but to get around T.L.O., wouldn't you need the officer directing the principal what to do, the officer saying, well, we need a criminal investigation, and here's what you need to do to get my evidence, or something that suggests that? Did that happen? Well, Your Honor, T.L.O. states that it would not apply if schools were working in conjunction with or on behalf of the police, and that's exactly what we have here. And so the memorandum of understanding between the police department and the school... Let's go back. What's your evidence in this case? I know you have a memorandum where SROs are in schools, and they try to divide up who's responsible for what, but what's the evidence here that the principal was working at the behest of Officer Carr when he asked O.W. to tell him what happened, or even asked to see the phone? Well, Your Honor, to start with the memorandum of understanding, that memorandum of understanding requires that school officials engage police officers at the beginning of every criminal investigation. But it does not require that the officer do any work. So what happened in this case is that after he detained O.W., he took O.W. to an office where Officer Carr also was at, and that's where the investigation occurred. Between the two parties at the same time... Well, I thought the evidence was to the contrary, that he had already been asked questions, he'd admitted he had this phone before Officer Carr ever appeared on the scene. Well, Your Honor, the evidence was that O.W. was taken... Mr. Baker took O.W. to a small room, a printing room, inside of the guidance counselor's office, and he told him there, he admonished him and told him to be truthful during the investigation. That's when he took O.W. to an office where Officer Carr was at. And inside of the office is where all of the questions were asked. Those two statements, we don't know what happened in those initial two statements because Mr. Baker discarded those statements and told O.W. to write a better confession. And he gave that best confession to Officer Carr to be used in the criminal investigation. How do we know? Officer Carr testified that she obtained that statement simply for the criminal investigation. She testified that she was not there in that room with Mr. Baker and O.W. to preserve order or discipline. But to follow up Judge Rushing's question, what's your evidence in the record that when the school principal notified the school resource officer that he had this situation, which I assume is fairly normal, that there was some sort of concerted activity? Well, all of the activity occurred in a concerted manner, Your Honor. Right, but what's your evidence of that? I know you have that supposition and you make the allegation, but what we need is evidence. Your Honor, Mr. Baker testified that, of course, he packaged O.W.'s phone pursuant to Carr's direction. She advised him to place the phone in airplane mode to power it down and to give it to her to be used as a part of the criminal investigation. The fact of the concerted... Wasn't that after? Wasn't that after the confession and after the principal tried to find the picture and  Well, yes, that was. However... Just a moment. You know, once again, Your Honor, Mr. Baker and Officer Carr both testified that Mr. ... that Officer Carr would not have been there at all had it not been a criminal investigation. Had it been... Mr. Baker testified that had it only been a food fight and something that did not involve a criminal act, that he would have never invited Officer Carr into the room at all. And so the fact that that's how the investigations normally work, but that the principal is the person leading the investigation and taking charge of the investigation on behalf of the police officers was concerning. In addition... Counsel, can I ask a question on that? It sounds like what you're saying is that if you have conduct that would violate school policy and might also create criminal liability, that the principal can do an investigation, but you've got to keep the resource officer, like, away. And then the resource officer can come in after that's done and do their own work. And I wonder if that's really what the... I'm getting tongue-tied on the letters, TCL, I forget the name of the case right now. But it seems to me the question from that case is there needs to be more direct... that the officer is directing the investigation. And so I wonder if the cases require the separation that you're suggesting, or rather just prohibit the officer from directly controlling and telling the principal what to do. Well, Your Honor, it's the fact that this is how the investigation works, so they already know what's going to happen prior to coming into the room. However, there's also proof on the record or from their testimony that Officer Carr would chime in from time to time to ask questions while Mr. Baker was leading the questions to O.W. So she was... there was communication going on at the same time.  I want to be sure I understood what you said. I took it... what you said was that the principal and the police officer had agreed in advance on what they were going to do. Is that... Your Honor, we did not have any communications between those two ahead of time other than... Okay. Well, I might have misunderstood what you said. Other than Mr. Baker engaging her presence at the beginning of the criminal investigation. However, we know while Mr. Baker was asking O.W. questions, Mr. Baker testified that Officer Carr chimed in from time to time and asked more questions. And we can only assume that those questions were incriminating as well and potentially leading his questioning as well. Your Honor, once again, the court... and I'm sorry, Your Honor, I see that I'm out of time. If you've got something you want to tell us briefly as part of your opening, go ahead, but you'll have some rebuttal time. Your Honor, we also argue that even under the TLO, if this case were to be argued under the TLO, meaning that they were to obtain special needs exception, which they're not entitled to special needs exception, where law enforcement is the primary purpose of the search. This court said that in United States versus Curry in 2020 when it heard it bump. My second point that I wanted to communicate is that even under TLO, Mr. Baker needed and he did not have probable cause for the search. Third, following a warrantless search is the government's burden to establish a valid search exception and the scope of the search and relying only on the exigent circumstances exception and failing to establish the scope of the search, the accolades have failed to meet their burden. And finally, we want to note that O.W. I don't know if the scope of the search was limited to looking for this photo. Well, we don't know where he searched inside of O.W.'s phone. He could have went so far back and he could have went further back necessary to view this image. He could have also searched other places in O.W.'s phone. I mean, is there other, is there any evidence in the record that he did anything other than go just to the photo section of his phone? No, Your Honor, but it's their burden to establish what the scope of the search was. Although we do admit that he searched the photo gallery, we don't know where else in the phone he searched and it's their burden to establish that, Your Honor. All right. Thank you very much. You've got some rebuttal time. Ms. Lauren. Thank you, Your Honors. Anne Laron with Pender and Coward on behalf of the School Board and Assistant Principal Reed Baker. May it please the Court. As O.W.'s counsel conceded, violations of the law on school grounds are also violations of the Code of Student Conduct. In this case, O.W. took a privately sent explicit photo of a fellow classmate and shared it and showed it at school during the school day. O.W. is not the victim here. A.F. is the victim. Children have killed themselves over similar situations of what O.W. did to her. This is a very serious offense that required the immediate action and investigation by the Assistant Principal. As the Court is clearly familiar with the facts of this case, a brief rendition, I believe, is still helpful to hammer in the timeline. O.W. and A.F. were both seventh grade students at Kempsville Middle School. They were texting each other over the winter break when each of them were at their respective homes. Months later, in March of 2019, while at school, O.W. was showing the explicit photo to other students. A.F. became upset. Another student complained to a teacher who reported the incident to Reed Baker, and then Baker investigates. The allegation was potential possession of child pornography, which is, of course, a criminal offense, and that criminal offense is also a violation of the Code of Student Conduct. T.L.O. establishes that on school grounds, the standard is reasonable suspicion, certainly with an allegation that a student is showing a photo on his phone at school grounds. So, if there's reasonable suspicion, assume there is reasonable suspicion, I think maybe your colleague conceded as much. It seems to me that the issue she's pushing on is, while the principal may be the primary one asking the questions, here we have a situation where there's at least a question of fact as to whether that was being directed by Officer Carr, and the evidence she says that would support that is, one, that there's this memorandum of understanding, two, that at the very outset of this, she contacts Officer Carr, and I think there's also references that you bypassed other security officers in doing that, and three, that Carr is there during the questioning and participating in the questioning. And so, I think the issue is, you know, I got, you know, conceding reasonable suspicion, maybe she didn't concede it, but if reasonable suspicion, even if it's conceded, you still have an officer who is, you know, coordinating the principal's investigation. Why isn't there a question of fact on that, or am I missing the whole wrong? Tell me on that issue, you know, what's your response to that? We would say it's not a material question of fact, as in the previous case law. In New Jersey versus TLO, there was an officer there. In Wofford v. Evans from 2004, this court extended the TLO analysis to cover law enforcement officers when investigating at school when the student is also suspected of breaking the law. So this court has already said that the officer, when investigating a violation of school conduct that also breaks the law, that they have the benefit of the reasonable suspicion standard. So at that point, we would argue that it is not a material dispute of fact. Wofford makes that immaterial effectively, is that correct? That's correct. Also, counsel has conceded that, although different from what she pleaded in the briefs, that the memorandum of understanding itself was not the sole basis for a conspiracy. And that would make sense, given that these memorandums of understanding are extremely common. Not only is there a model memorandum of understanding from the Virginia Department of Education, other states have similar ones, and so does the U.S. Department of Justice. So it proposes these memorandums of understanding when dealing with the interaction between school resource officers and the schools. The core holdings of the cases, where the dividing line seems to be, is whether the investigation involves criminal conduct occurring on school grounds versus conduct outside of school grounds. And the line of the differentiation would be that a school resource officer cannot be used to investigate a criminal act outside of school, but question the student in school by using the administrator to bypass constitutional safeguards. Where do you, I mean, is that right? I mean, I can appreciate if you got an action taking place outside the school, that would make it a stronger case that you're using the school to investigate, you know, really for a criminal action. But, you know, there's lots of law about how you don't, you know, how you don't forfeit that your constitutional rights at the schoolhouse door, you know, didn't mean that, so I wonder whether that's the line that the law really says we look at. Well, for the point of fact that we go to the jurisdiction of the school official, if a criminal act occurred outside of school grounds, the school official would not have the jurisdiction to investigate, except in a very limited circumstance, that violation. What about Fifth Amendment? I mean, TLO talks about Fourth Amendment. There's a claim that the parties don't deal a lot with, which is the Fifth Amendment coercion claim. I mean, and I didn't see authority that really helps us in a TLO sort of way strike that balance between you still have constitutional rights, but they're not the same as in school as there might be elsewhere. I didn't see anything that really tells me how to make sense of that with a Fifth Amendment coerced confession claim. Do you have a suggestion about how we look at that? Yes, I would suggest that's the U.S. Supreme Court case of JDB versus North Carolina. And in fact, in that case, the incident that was being investigated was a criminal act outside of school. In that case, it addressed the voluntariness of confessions of minors. That case also involved a 13-year-old and says that you consider the totality of the circumstances in whether or not the student would feel they were being... So you can consider age in whether... You can consider age, the length of the questioning, the circumstances of the questioning. You consider whether Miranda rights were given? They found in that case it was not necessary because the student was not in custody and therefore the Miranda rights were not triggered. But isn't that a factor in whether a confession is voluntary or not? I think in that case, and again, the JDB versus North Carolina case found that the confessions were voluntary. But those also involved an investigation by the police behind closed doors. Whereas in our case, the investigation was by the school official in the guidance office with the door open. Let me step back and I appreciate that. I'm sorry to cut you off, but I want to make sure I understand the approach, the test in school for a Fifth Amendment coerced confession case. And tell me what you think that test is based on the case you're just describing. Certainly. Well, I think in a case that I was describing, if you mean the North Carolina case from the Supreme Court, that in that case, it would be whether the student felt they were free to leave. They're not in handcuffs. They haven't been told they're under arrest. There is the questioning, but the issue is the totality of the circumstances. And again, I would point to that case because that was questioning done by a police officer behind closed doors. So are you saying that the standard, the test is the same as it is for any involuntary confession case, but we just take into account the circumstances and in school cases, the circumstances may be unique in that you're on school grounds, you're talking to a faculty member and those sorts of things. But I don't hear you articulating a different test. Is that right? No. I believe there is a different test. Judge Qualdobaum asked me to talk about the JDV versus North Carolina case. With regard to our present case, if there are Miranda warnings, that is not something that would be implicated when the administrator is doing the investigation of a violation of school policy on school grounds. So is that, I just want to be sure I understand your argument. Are you saying the test is simply different where the school administrator is doing the interrogation? I believe if the school administrator is doing their own independent investigation. In this case, while OW argues that the police officer was directing the investigation. Right. I understand that. What I'm more interested in is what do you say the standard is when it's the school administrator doing the interrogation? Well, when the school administrator is doing the interrogation, the school administrator is investigating a violation of the code of conduct. And this is where TLO and the other, and Wofford v. Evans talks about your different, the school is just a different setting and that you have the school administrators when investigating a violation of student conduct, they have the right to investigate. Furthermore, in this particular case, I would direct that there is a bring your own device policy with the school that both OW and his parents signed off on that states that the school administrators have the right to search a phone if it's, they have a reasonable suspicion that a violation of the code of student conduct has occurred. That is, and that students and parents devices come to school at their own risk. And so this was in essence, almost a waiver of sorts that by OW using this phone on school grounds, in violating the code of student conduct, he has already acknowledged that the administrator has the right upon reasonable suspicion, which appears to clearly be here in this case, to search that phone. And OW, in this case, already can invest. So to be clear, the district court didn't use a waiver basis. Correct. And that it was not the waiver, it does not have to be the waiver basis. But in this case, with that bring your own device policy, it's certainly cited by the district court as putting the students on notice of the standard. The student chooses to have a phone at school. So that's part of the totality of the circumstances? Yes. And also in this case, OW was not in custody. He was being questioned in an office, in a familiar setting with a school administrator with the door open. And so under the other case law... Is that custody question a question of fact? I mean, typically a question of fact? I believe in this case, in light of the precedent, it would be a question of law. So I hear you, he's not in a jail. That said, going to the principal's office from my days was not a signal that things were going well for you. So he probably felt like he was in some trouble there. He had an officer there who has a uniform and has a gun. He's a minor. Are you saying he really felt the circumstances were such that he could have just gotten up and walked out of there, a reasonable seventh grader would have thought that? He probably would not have thought that, but we would state that that is not material in this instance because the school law is simply different, because the school administrators need to be able to handle matters occurring on school grounds. That's why TLO sets forth the different standards, why Wofford v. Evans extended even the latitude that an administrator has to a police officer in this setting. And so to impose a requirement for any time a student went to the principal's office to say you must have Miranda warnings would make it impossible to efficiently run the school. All right. We've given you a little extra time and I see you're sharing it with co-counsel. So Mr. Kurt, we'll hear from you. May it please the court, my name is Joseph Kurt and I represent Officer Marie Carr in the city of Virginia Beach. Appellant's claims against Officer Carr and the city are without merit. The first thing I would point out is that count one of the second amended complaint does not assert a fourth or fifth amendment claim against Officer Carr. So contrary to what appellant's attorney said on remand, that would not be at issue. What about the conspiracy count applied to Officer Carr? That's right. So this case against Officer Carr is about the conspiracy count and that claim is unsupportable with regard to both the facts and the law. I'll start with the law. A conspiracy claim requires in addition to coordinated action based upon an agreement, a resulting constitutional violation. And we agree for many reasons, including what counsel for school appellees said, that Mr. Baker's actions were clearly lawful pursuant to TLO and its progeny. Does TLO tell us about fifth amendment coerced confession? No, it doesn't. And I will make a, I'd like to address in a moment, if you would, the record very much that speaks to that. You don't have to do it now. Do it wherever it suits you. But if you would not only address the record and why you think there's not a fifth amendment issue, if you'd start with the test and how we consider fifth amendment claims in a school setting. Well, let me take that point now then. I think that the test going to JDB is still, it's a totality of the circumstances test. It includes the fact, of course, that administrators do not have to give Miranda. And the court says it includes age. But here there simply is no evidence of coercion. And there certainly is no evidence of coercion involving Officer Carr. And this is a striking part of the record that I'd like to point out that we really didn't on brief. And it's the fact that... I think the plaintiff, though, argues that the setting was inherently coercive. You have a young child, they've been taken out of class, they're in a small room, I don't know that you can realistically expect a 13-year-old to think he can walk out. But she says those, as I understand it, that those are sufficient facts to show a coercive atmosphere. Well, they wouldn't be according to the cases that we've cited. And they've cited none to the contrary. But we cite JD versus Commonwealth, which is a Virginia state court case. That says there's not even a custodial investigation where they didn't even get to the coercion part. But it's not a custodial investigation just because a police officer is there. One other thing that I'll point out, I think this really applies more to school defendants, but in state versus JTD that we cite on the record, this is a Florida case. The question of whether the student is free to go is really not completely out to these cases because what it says is that in schools, as a student, you're not free to go where you are. I can tell you that. I'm a proud former high school teacher of 12 years. Students cannot go where they want. That question cannot be strictly... And that makes some sense. And likewise, I suspect school administrators coerce confessions of stuff all the time. Coerce sounds real bad in this setting, and maybe it has criminal implications, but maybe you're kind of suggesting that's not the case. I wonder if that's even... I would think a lot of schools would say, in some way, we do coerce confessions to at least problems with school rules and violations. Well, that may be the case in many circumstances, and I think it goes to the spirit of so many of these cases related to TLO and other circumstances where courts understand schools are complex and challenging environments, and students are very vulnerable in terms of violence. But a student like AF, think about the vulnerability of that girl while that photo is... That's the worst day of her life. Those are the worst moments of her life. And school administrators who are not trained in the law, courts make this point over and  over, they've got to have flexibility to take care of their school and make sure that there's order there. Is there any argument, though, that the standard for voluntariness is different? I know we're using the words coerce, and maybe we're doing it in kind of a colloquial way that when my teacher is upset with me, that it coerces the truth out of me, right? But this test for the Fifth Amendment or the Fourteenth Amendment is that the defendant's will has been overborn as such that their statements are involuntary. So, I don't want us to lose sight of that standard. Are you saying that that standard is different in school, and it is somehow a different standard? Or what's your point on that? No, Judge Rushing, you are correct. That substantial standard of the question is whether O.W.'s will was overborn, that is the question, whether you're in schools or whether you're outside of schools. The problem for them is that the record really, again, going more to Mr. Baker, is about the pressure. It starts with the complaint. It says, he told O.W., tell the truth. He uses his trusted relationship with him to say, tell the truth. That is not evidence that he overbore O.W.'s will. And with regard to my client's participation, I think it speaks generally to what happened. The facts are really clear, and it's really striking that O.W. for years was telling the same story multiple times that Officer Carr told in her original report from the date of the incident. And I'll point you to Joint Appendix page 1331. This is O.W.'s own motion to suppress from his criminal case. And on that page, he is very express. Baker received the reports. Baker started this investigation. He starts calling students down. Not Carr. It was Baker that retrieved O.W. from class that day. He took him into the guidance office, and he started asking questions. According to O.W., Carr wasn't there at the beginning. That story changes later. But O.W. says Carr wasn't there. She came in later and started taking notes. Again, O.W. makes clear while Carr's taking notes, Baker is still asking questions. And it is to Baker's questions that he says he, quote, made a full confession to Baker's questions. And that is also consistent with the JDR court's finding that Carr, quote, did not participate in the interview at all. That's on Joint Appendix page 1350. Appellant's own complaint, especially at Joint Appendix pages 29 and 30, tells essentially the same story years later. This is Baker's investigation. He gets a report. He does what anyone would want a school official to do, call students out of class and try to get to the bottom of it. The only little change there, he omits whether Carr comes into the office later or not. But he also says Carr sat silently taking notes. So it is true O.W. later tells a different story during deposition. But he does so in a manner that further undermines his claim. Because he's vociferous. I told Baker the truth from the beginning, he says. And he says he made a full confession in writing and orally before Officer Carr was involved or even present. And so recognizing that this is fatal to their claim, appellant on brief at page 5 in the opening brief, and says it again in the reply brief, says O.W. was a 13-year-old. You cannot trust that deposition testimony. And I do take that point. And what appellant says to you is instead you should trust Carr's report that's contemporaneous from March of 2019. Well, the problem there is that Carr's report says the same thing that O.W. was saying all along. This was Baker's investigation. Baker's doing all the questioning. Carr makes it expressly clear she did not ask a single question. And that is the truth. There is no disputed material fact about this. So if Carr had taken O.W. down to the police station and asked the same questions that Baker asked and said, no, that statement's not good enough, didn't give Miranda rights, would you have a Fifth Amendment issue? You potentially would. That would be a very different set of circumstances. And I believe there are courts who point to, if it's the SRO who's driving the train and asking questions, they've got to give Miranda rights. We don't dispute that, and that's a good policy. And so with that, if there are no further questions, again, I would insist that there is really no genuine disputed material fact on these issues. The case law and the record are clear on every key point. The district court properly granted some re-judgment, and we ask you to affirm it. All right. Thank you very much. Ms. Gaines, you've got some rebuttal time. I can't start this without discussing suicide, Your Honors. Not only did Mr. Baker pass by four security guards, but he also went to the guidance counselor's office. There were no guidance counselors there. This was the perfect time for guidance counselors, who under Virginia Code 22.1-298.1b7, are required to be trained on students' depression, trauma, and suicide prevention. Where were they? Also, we have to speak to TLO once again, Your Honor. TLO is a special needs case. The affilies want to distinguish TLO and make it appear that it's only a school search case. It's a special needs case. The same special needs doctrine that the court applied in Ortega versus O'Connor, I'm sorry, O'Connor, when it turns to government workplace searches. The exact same special needs doctrine that was applied in Ferguson, the same special needs doctrine that was applied in Griffin and its progeny, Knights and Sampson. And even in those cases, the court found where there was an investigatory purpose, despite the fact that probationers were already convicted criminals. But where there was an investigatory purpose in Knights, the court still found the special needs doctrine did not apply. And instead of- Can I ask you about, I know we've been debating the parameters of TLO and when it does and doesn't apply, but if we thought the confession was voluntary, would the principal then have had probable cause to search the phone? He would have other students saying the phone has this picture on it. And he would have O.W. saying my phone has this picture on it. Would that be probable cause to search the phone for the picture? No, Your Honor, later on for Carr's second search, she testified- No, no, no, we're not talking about Carr. You only sued the principal over the search. So did the principal have probable cause when other students say the phone has this picture and O.W. confesses, I sent the picture, it's on my phone still. Did the principal then have probable cause to search the phone for the picture? No, Your Honor. And the reason for that is because Carr's search came after Mr. Baker's search and she still did not have probable cause. Why are we talking about Carr? You did not sue Carr for a violation of the Fourth Amendment. I'm asking about the principal. Yes, Your Honor. Did the principal have probable cause? So the problem is that they understood that 12 and 13-year-old children lack sufficient individual credibility. Carr testified- I'm asking a hypothetical. Assume that I think the confession is voluntary and that the other students, which is not disputed, that other students said the phone has the picture. So other students say it, and now we have a voluntary confession that it's on the phone. Can the principal then look at the phone? He only spoke to O.W. prior to searching O.W.'s phone. There was no indication that he had already spoken to those other children and corroborated what O.W. had said. He only spoke to O.W., and once again, Officer Carr testified that she knew that children of that age lacked indicia of credibility and that she could not know- Answering my question, yes or no, that there was probable cause to search the phone? No, Your Honor. There was not. But there was not probable cause to search the phone. And why is that? Because the children lacked indicia of credibility under Doyle. There was one element of the- well, first of all, Mr. Baker testified- Now, was that an argument made in the district court? Yes. Yes, Your Honor, and Mr. Baker testified that he didn't know the elements of child You can never trust a child who says, this picture is on the phone, therefore you can never have probable cause because you can't trust a child's testimony? Well, no, Your Honor, but she testified that she knew children would exaggerate in these kinds of situations. She knew that she could not rely on- Wait, Officer Baker said that? No, I'm sorry. Officer Carr testified. Okay, but we're asking whether Baker could both get the phone. Your Honor, we believe that Mr. Baker did not have probable cause to search the phone. All right. You got anything else you want to add this morning? Yes, Your Honor. I just want to touch on the fact that, once again, Wofford v. Evans is an exigent circumstances case. It is not a special needs doctrine case in the way of Ortega, Ferguson, Griffin, Knights, Samson, which TLO is certainly one of those cases. Wofford is an exigent circumstances like Curry. In United States v. Curry, this court said that the special needs doctrine does not include exigent circumstances and there are two separate doctrines. The affiliates are not relying on their special circumstances or their special needs doctrine. Your Honor, apparently, the police department concedes that there was some coordinated conduct sufficient to establish an agreement between the two separate entities. Also, voluntariness is a question of fact. It should have also always been enough to get us to a jury. I also want to speak on Officer Carr's report, which, as Mr. Kurtz stated, she authored that report contemporaneously with the investigation. What it says in that report was that O.W. was not telling the truth. She was sitting in the room with O.W. and Mr. Baker and O.W. was not telling the truth. She testified that Mr. Baker told O.W. what he was saying did not make sense. Eventually, O.W. told the truth during that investigation. That's all, Your Honor. Once again, we'll ask the court to reverse and vacate the judgment of the district court. Thank you very much. We'll come down and recounsel and move to our next case.
judges: G. Steven Agee, A. Marvin Quattlebaum Jr., Allison J. Rushing